106 F.3d 403
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Cornell B. HUGHES, Plaintiff-Appellant,
v.
KOPPERS INDUSTRIES, INC., Defendant-Appellee.
 No. 96-2625.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1996.
Decided Jan. 3, 1997.
 
 Before COFFEY, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Cornell B. Hughes (Hughes) appeals from the summary judgment granted to the defendant Koppers Industries, Inc. (Koppers), on his Title VII claim of failure to promote due to race, 42 U.S.C. § 2000e. Koppers stipulated for the purposes of summary judgment that Hughes could establish a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court[1] concluded that Koppers had presented non-discriminatory reasons for not promoting Hughes, see St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2748 (1993), and that Hughes had not produced evidence that these reasons were pretextual, see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Hughes' argument on appeal is that he did put forth evidence of pretext. We affirm.
 
 
 2
 Hughes began employment as a laboratory technician at a Koppers chemical plant in June 1988, after nineteen years as a laboratory technician and package quality control technician at Coca Cola Company. In October 1993, Hughes learned that Koppers would be filling a vacant position for laboratory supervisor. Hughes, who is black, and four other candidates, two of whom are black and two of whom are white, applied for the position. Joseph Gerba, a laboratory supervisor, and Ronald Smith, the personnel director, interviewed the five candidates. Gregory Traczek, who is white, was selected for the position. Shortly thereafter, Hughes filed a charge with the Equal Employment Opportunity Commission, alleging failure to promote because of race. The EEOC found that the evidence did not substantiate the allegation of race discrimination, and issued a right-to-sue letter. Within ninety days, Hughes filed this lawsuit.
 
 
 3
 Hughes's appeal relies in large part on what he considers favorable comparisons between himself and Traczek:
 
 
 4
 1) Hughes had nineteen years of experience in the industry and over five years with Koppers; Traczek had no experience in the industry prior to his four years at Koppers;
 
 
 5
 2) Hughes had trained co-workers, including Traczek;
 
 
 6
 3) Hughes had majored in chemistry for two years in college; Traczek had majored in biology;
 
 
 7
 4) Hughes had performed all of the functions of supervisor, such as maintaining the equipment and running special projects; Traczek had been on the swing shift and had not performed many of the functions of supervisor.
 
 
 8
 Hughes also cites two supposed contradictions in the evidence:
 
 
 9
 1) Smith stated in his deposition that all one needs is a high school diploma for the supervisor's job, and yet also stated that Traczek was selected because of his biology degree;
 
 
 10
 2) Smith and Gerba stated that Traczek worked independently, had good communication skills, and had good leadership skills when he was the union steward, while Hughes and Briggs (the union president) stated that Traczek was a lousy leader when he was a union steward and that there were many complaints about him (with Hughes adding that he had all of the skills attributed by Smith and Gerba to Traczek).[2]
 
 
 11
 Hughes is required to present evidence of pretext, which "means a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995). An employee may demonstrate pretext through evidence showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employment action], or (3) that they were insufficient to motivate [the employment action]." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.1988) (quoting Kier v. Commercial Union Insurance Companies, 808 F.2d 1254, 1259 (7th Cir.), cert. denied, 481 U.S. 1029 (1987)) (emphasis in original). However, "there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment." Kralman v. Illinois Dep't of Veterans Affairs, 23 F.3d 150, 156 (7th Cir.), cert. denied, 115 S.Ct. 359 (1994). As this court has emphasized time and again, a court does not "sit as a super-personnel department that reexamines an entity's business decisions." E.g., McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992). Hughes must "create an issue as to 'whether the employer honestly believes in the reasons it offers,' not whether [the employer] made a bad decision." Sample v. Aldi Inc., 61 F.3d 544, 549 (7th Cir.1995) (quoting Rand v. CF Indus., Inc., 42 F.3d 1139, 1145 (7th Cir.1994)). Accordingly, the issue is not whether Hughes was more qualified than Traczek, but whether the employer could not have honestly believed that Hughes was less qualified than Traczek.
 
 
 12
 Of the points raised by Hughes, the strongest possibility of pretext is Smith's alleged statements that, on the one hand, only a high school diploma was needed and, on the other hand, that Traczek was selected because of his biology degree. However, Hughes misreads Smith's deposition. A college degree was not the sole factor that Smith considered in choosing Traczek over Hughes, but rather it was a factor that "balanced out" Hughes' experience prior to working at Koppers. [Smith deposition at 88, 94-95] Moreover, Smith affirmed that a high school degree was the "minimum that [he] would look for," but that "any degree would [certainly] be given more weight." [Id. at 67-68] Thus, it is clear Smith was not contradicting himself: he stated that a college degree would be given more weight, and that the college degree was a factor weighing in favor of Traczek. Smith did attest that a chemistry degree was probably better than a biology degree, all other things being equal. [Id. at 68] But that does not help Hughes, for while Hughes had majored in chemistry for two years in college, he did not go on to receive his degree, as Traczek had.
 
 
 13
 With respect to Gerba, Hughes failed to controvert and thus admitted a key assertion in Koppers's statement of uncontested facts (see N.D.Ill.R. 12(M), 12(N)), based on Gerba's deposition: "During the period of time in which Gerba supervised Traczek, Traczek demonstrated good leadership skills, was able to effectively communicate both in writing and orally, was able to independently manage his workload under high pressure situations, and would work unsupervised when given extra work." These qualities, along with Traczek's college degree and experience at Koppers, are more than enough factual basis for a conclusion that Traczek was qualified to be a laboratory supervisor. Meanwhile, Hughes does not provide any citations to the record to cast doubt on Gerba's beliefs about Hughes' deficiencies.
 
 
 14
 In sum, Hughes has not presented evidence that either Gerba or Smith did not honestly believe Hughes to be less qualified than Traczek. Whether or not Hughes was actually more qualified is not an issue for this court.
 
 
 15
 The judgment is AFFIRMED.
 
 
 
 [1]
 Both parties consented to Magistrate Judge Guzman's disposition of the summary judgment motion
 
 
 [2]
 Further contentions--that Koppers had previously stressed the importance of having a chemical background when selecting candidates; that a letter from Koppers's Vice President stated that all the candidates were competent; that there were never any complaints about Hughes; and that Koppers had a history of not promoting blacks into supervisory positions--are waived because they are presented for the first time in the reply brief and are unrelated to the contentions of the opening brief