**James MATHEWSON,
Plaintiff-Appellant,**

v.

**NATIONAL AUTOMATIC TOOL CO.,
INC., Defendant-Appellee.**

**No. 85–2480.**

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1986.

Decided Sept. 4, 1986.*

Opinion Dec. 9, 1986.

* This appeal was originally decided by unreported order on September 4, 1986. *See* Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Nora L. Macey, Segal & Macey, Indianapolis, Ind., for plaintiff-appellant.

Michael V. Abcarian, Johnson, Bromberg & Leeds, Dallas, Tex., for defendant-appellee.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff James Mathewson ("plaintiff") brought this suit pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, against defendant National Automatic Tool Company ("the Company"). The jury returned a verdict for plaintiff in the amount of $52,824 and found that defendant's action was willful. The district court therefore doubled the award to $105,-648 and also awarded plaintiff attorney's fees and costs. However, the court subsequently granted the Company's motion for judgment notwithstanding the verdict. On appeal, plaintiff contends that the district court erred in entering judgment for the Company notwithstanding the verdict.

I

Plaintiff was hired by the Company in 1975 and in 1981 was 61 years old. Plaintiff held the title of director of industrial relations at the Company. The president of the Company, Allan McCrea, testified that plaintiff did a good job, and neither McCrea nor any other officer gave a negative evaluation directly to plaintiff.

The Company was acquired in May 1981 by UNC Resources, Inc. ("UNC"). Just prior to this acquisition, Walter Baer, director of employee relations for a subsidiary of UNC, evaluated the labor and human resources situation at the Company for UNC. Baer met individually with each of the Company's top five corporate officers. According to Baer, they unanimously held a negative opinion of plaintiff's performance at the Company; none of them told Baer that plaintiff was doing an acceptable job. Baer said that all five officers essentially told him that plaintiff should be replaced.

However, three of these five officers contradicted Baer's version of the facts in their testimony at trial. Jack Hunt, executive vice president of operations, testified that he never even talked to Baer about plaintiff. Dick Norman, vice president of engineering, said that he never told Baer to terminate plaintiff. Norman said that he criticized plaintiff only after UNC's acquisition of the Company, and that even then his only criticism concerned plaintiff's failure to recruit qualified engineers. Norman added that there were other factors involved in this problem besides plaintiff's competence. Nelson Hardin, controller, also said that although he did complain about plaintiff's recruiting, he never recommended that he be terminated.

Nevertheless, as soon as the acquisition of the Company by UNC was completed in May 1981, Baer began to recruit a new director of industrial relations for the Company. Baer told plaintiff that at his age, he should not have to put up with the day-to-day irritations of dealing with union grievances or employee problems. Baer created the new position of director of human relations for plaintiff. Plaintiff spent most of his time in this new position writing job descriptions and conducting a pre-retirement program. Baer hired Thomas Bancroft, age 29, to replace plaintiff as director of industrial relations.

Plaintiff was not the only older employee at the Company who was displaced from his position after the acquisition. Bill Hawks, age 57, was formerly the vice president of manufacturing, but was moved to a newly created position heading a repair function. Norman, age 61, was formerly the vice president of engineering, but was moved into a support job and was replaced by someone who was 38 years old. Paul Smith, age 62, was formerly chief assistant in the industrial engineering department, but was moved to a "special assignment" where in his words he did "practically nothing," and was replaced in his former position by someone in his early thirties.

The Company's business began to decline in the late fall of 1981. Layoffs of employees became necessary. The Company determined that the layoff of non-union employees, such as plaintiff, would be according to performance, with the poorest performers being laid off first. The Company further decided that it was necessary to eliminate one job in the Human Resources Department. Baer decided that plaintiff was the person who would be terminated, and he was laid off in May 1982. Baer told plaintiff that his position was being eliminated, and that Bancroft was also being laid off. When plaintiff asked Baer why he could not get back his old position that Bancroft had taken, Baer told plaintiff that all the vice presidents and managers he had talked to when Baer first began to evaluate the Company had recommended that plaintiff be terminated.

Bancroft was not laid off until six months later in November 1982. In October 1983, he was recalled by the Company but he declined to return. Plaintiff was never recalled.

## II

In an age discrimination suit, plaintiff has the ultimate burden of proving that his age was "a determining factor" in defendant's decision to terminate him. *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1423–1424 (7th Cir.1986); *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). Plaintiff may meet this burden in one of two ways. Plaintiff may try to meet his bur-

den directly by presenting direct or circumstantial evidence that age was a determining factor in his termination. *Johnson v. University of Wisconsin-Milwaukee,* 783 F.2d 59, 63 (7th Cir.1986); *Dorsch,* 782 F.2d at 1424; *LaMontagne,* 750 F.2d at 1409. Alternatively, plaintiff may meet his burden indirectly by using the shifting burdens of production method articulated by the Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Johnson,* 783 F.2d at 63; *Dorsch,* 782 F.2d at 1424; *LaMontagne,* 750 F.2d at 1409. Under either method, the ultimate burden of persuasion remains with the plaintiff at all times. *Johnson,* 783 F.2d at 63; *LaMontagne,* 750 F.2d at 1409. At this stage of the case, after a full trial on the merits, the particular method of proof used is irrelevant; the main focus is simply on the ultimate question whether plaintiff's age was "a determining factor" in defendant's decision to terminate him. *United States Postal Service v. Aikens,* 460 U.S. 711, 715–716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403; *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 480 (7th Cir. 1986).

■ A court of appeals reviews *de novo* a district court's grant of judgment notwithstanding the verdict and applies the same standard as the district court. *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985); *LaMontagne,* 750 F.2d at 1410. This standard is whether there is substantial evidence to support the verdict; *i.e.,* whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict. *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 512–513 (7th Cir.1986); *Christie v. Foremost Insurance Co.,* 785 F.2d 584 (7th Cir.1986); *Christensen v. Equitable Life Assurance Soc.,* 767 F.2d 340 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 885, 88 L.Ed.2d 920; *Tice,* 761 F.2d at 1213; *LaMontagne,* 750 F.2d at

1410. Any conflicts in the evidence must be resolved in favor of the party winning the verdict. *Yarbrough,* 789 F.2d at 513; *Christie,* 785 F.2d at 586; *Tice,* 761 F.2d at 1213; *LaMontagne,* 750 F.2d at 1410. Every permissible inference must be drawn in favor of that party. *Tice,* 761 F.2d at 1213; *LaMontagne,* 750 F.2d at 1410. The reviewing court of course does not judge the credibility of witnesses. *Yarbrough,* 789 F.2d at 513; *LaMontagne,* 750 F.2d at 1410. This last standard is particularly crucial in an employment discrimination case, where the result frequently turns on sensitive and difficult factual questions involving motive, thus often making the credibility of the witnesses decisive. *Yarbrough,* 789 F.2d at 513; *Christie,* 785 F.2d at 586.

■ Applying the above-described standards of review to the ultimate question of whether plaintiff's age was a determining factor in the Company's decision to terminate plaintiff, it is clear that there was sufficiently substantial evidence to support the verdict. Baer's remarks to plaintiff upon his initial demotion indicate that age played a role in that decision. Baer also claims that five officers told him that plaintiff should be terminated, yet three of the officers deny such statements (one denies even having talked to Baer), and plaintiff had never received a negative evaluation in his six years at the Company. The displacement of similarly situated older employees, often in favor of younger employees, also supports plaintiff's claim. Additionally, Bancroft, age 29, took over plaintiff's old job when plaintiff was moved to his newly created job, and when plaintiff was subsequently terminated from this new job, Bancroft remained with the Company. See *Stumph v. Thomas & Skinner,* 770 F.2d 93 (7th Cir.1985) (finding of age discrimination on somewhat analogous facts). Although Bancroft was later laid off as well, he, and not plaintiff, was subsequently asked back by the Company. When all conflicts in the evidence are resolved in plaintiff's favor and every permissible inference is drawn in his favor, as

required, the verdict in favor of plaintiff must be sustained.

 The Company's main contention is that much of plaintiff's case is related to his demotion, which is time-barred and therefore not in issue in the instant case. The district court similarly noted that while plaintiff produced sufficient direct evidence to sustain a verdict finding a discriminatory demotion, that was not at issue, and plaintiff had produced no direct evidence of a discriminatory discharge. Although much of plaintiff's evidence relates to circumstances surrounding his demotion, it is well settled that evidence of earlier discriminatory conduct by an employer that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571; *Allen v. Montgomery County,* 788 F.2d 1485, 1488 (11th Cir.1986); *Caldwell v. National Association of Home Builders,* 771 F.2d 1051, 1057 (7th Cir.1985); *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir.1981); *James v. KID Broadcasting Corp.,* 559 F.Supp. 1153, 1155 (D.Idaho 1983). Employment discrimination is difficult to prove, and this difficulty often makes it necessary to use circumstantial evidence. *Allen,* 788 F.2d at 1488. The linkage between evidence surrounding plaintiff's demotion and his termination claim at issue is strengthened by the fact that when Baer terminated plaintiff, Baer mentioned the negative comments he had received a year earlier from plaintiff's fellow officers. These same negative comments had played a role in Baer's demotion of plaintiff, and these negative comments were partially contradicted by the testimony at trial of three of these officers. While the lapse of time between plaintiff's evidence relating to his demotion and the time of plaintiff's termination may reduce the weight of the evidence relating to his demotion, the overall evidence is sufficient to sustain the jury verdict.

For the above reasons, the district court's grant of the Company's motion for judgment notwithstanding the verdict is reversed with directions to reinstate the March 13, 1985, judgment in favor of plaintiff.