12 F.3d 1100
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Marion BOJDA, Plaintiff-Appellant,
v.
BLACK DOT GRAPHICS, INC., Defendant-Appellee.
 No. 92-4117.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 30, 1993.[1]
Decided Jan. 5, 1994.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 91 C 6331; Harry D. Leinenweber, Judge.
 Before POSNER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.
 
 
 1
 N.D.Ill.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Marion Bojda, 52 years old, was permanently laid off from his job of 12 years as a proofreader by his employer, defendant Black Dot Graphics, Inc., when their plant closed. Plaintiff filed suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621 et seq,[2] on the basis that defendant retained two proofreaders, transferring them to a different site, and both were under 40 years of age. The district court entered summary judgment in favor of defendant, finding that plaintiff failed to raise a genuine issue of material fact on the question of whether defendant's age-neutral reason for terminating plaintiff was pretextual. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1219 (7th Cir.1980) (Title VII racial discrimination analysis extended to age cases), cert. denied, 450 U.S. 959 (1981).
 
 
 4
 Our review of an order granting summary judgment is de novo. Lohorn v. Michal, 913 F.2d 327 (7th Cir.1990). To uphold a grant of summary judgment, we view the record and all inferences drawn from it in a light most favorable to plaintiff, as the party opposing the motion. Id. Summary judgment is only proper where no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 5
 Plaintiff contends that the district court required plaintiff to prove pretext rather than merely establish a genuine issue of material fact on the issue. Plaintiff misunderstands the burdens of summary judgment and the overlaying burdens imposed by the substantive law of employment discrimination. See Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir.) (plaintiff "misapprehend[ed] the burden shifting process," and seemed "to argue that he [had] no pretext burden at all"), cert. denied, 62 U.S.L.W. 3348 (1993).
 
 
 6
 In an employment discrimination case, where plaintiff chooses to establish his claim by using the burden-shifting method of McDonnell-Douglas, and defendant moves for summary judgment, defendant in effect must show that at trial it would be entitled to a directed verdict. The summary judgment standard mirrors that of a directed verdict test, i.e., if what is contained in the affidavits, pleadings, depositions and other materials were all the evidence before the court, and upon such evidence there would be nothing left to go to a jury and the court would be required to direct a verdict, then summary judgment should be entered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Perfetti v. First National Bank of Chicago, 950 F.2d 449, 456 (7th Cir.1991), cert. denied, 112 S.Ct. 2995 (1992).[3]
 
 
 7
 Here, plaintiff does not dispute that defendant carried its burden of production by offering facts explaining why plaintiff was laid off while other, younger proofreaders were retained. At this point, plaintiff, as the non-moving party in a summary judgment proceedings, was required to counter with materials which raised a factual dispute as to the material issue of pretext. Any respondent to a summary judgment motion has this responsibility. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (opponent to summary judgment must affirmatively demonstrate by specific factual showing that a genuine issue of fact requires trial). Plaintiff's duty here, however, was greater because he brought the suit and therefore retained the burden of persuasion at all times. He cannot sit idly and wait until trial begins, hoping some decent evidence will surface by that time. Plaintiff "should not be allowed to proceed with a case on the mere hope that trial would produce evidence he was unable to garner at the stage of summary judgment." Dale v. Chicago Tribune Co., 797 F.2d 458, 465 (7th Cir.1986), cert. denied, 479 U.S. 1066 (1987), quoting Parker v. Federal National Mortgage Association, 741 F.2d 975, 980 (7th Cir.1984). Consequently, the fact that plaintiff need not prove every material fact at the summary judgment stage does not mean he need not even offer some facts which show a dispute exists. Plaintiff's error lies in his attempt to use his prima facie case to meet his second evidentiary burden of demonstrating a genuine issue of material fact regarding pretext.[4] The purpose of Burdine "was not to allow plaintiff to go to the jury without presenting any evidence at all; its purpose was to allow plaintiffs to prove discrimination without presenting any evidence of discrimination, and solely with evidence of pretext." Perfetti, 950 F.2d at 452. Thus, after defendant proffers its age-neutral reasons, the "McDonnell Douglas framework ... is no longer relevant," the "presumption ... simply drops out of the picture" (St. Mary's Honor Center, 113 S.Ct. at 2749), and plaintiff then must carry both the burden of persuasion (which has never shifted) and of production.[5]
 
 
 8
 We go on then to examine de novo the evidence of record to determine whether genuine issues of material fact exist. Plaintiff argues that three areas of evidence indicate that genuine issues of material fact exist regarding whether he was laid off on the basis of his age. First, he maintains that "[s]tatistical inferences show[ ] that the December discharges adversely impacted older employees." The cumulative effect of the two RIFs[6] was that 33 proofreaders were laid off; 14 were under age forty, and 19 were over age forty. These numbers would not permit a reasonable jury to conclude that age was a factor in plaintiff's discharge.
 
 
 9
 The second area of evidence plaintiff points to involves defendant's methods for determining who were the "best people" it should retain after each RIF. Plaintiff argues that defendant's claim that it could only keep its "best people" is belied by the lack of "objective or agreed upon criteria by which to judge who was retained and who was not."[7] Plaintiff adds: "Black Dot had no job evaluation system and did not consult performance evaluations."
 
 
 10
 We acknowledge the danger of employers who use subjective factors to "camouflage discrimination." Namenwirth v. Board of Regents of U. of Wisc. System, 769 F.2d 1235, 1243 (7th Cir.1985), cert. denied, 474 U.S. 1061 (1986). An employer may, however, rely on subjective judgment about plaintiff's capabilities even where a plaintiff was objectively superior to an employee who was not fired. Perfetti, 950 F.2d at 457, citing, Christie v. Foremost Ins. Co., 785 F.2d 584, 586-87 (7th Cir.1986) (upholding jury finding that employer's reason of "standard policy" was pretextual were plaintiff produced evidence that employer's own managers did not know of policy). See also Konowitz v. Schnadig Corp., 965 F.2d 230, 234 (7th Cir.1992) (the "absence of written guidelines for carrying out the RIF is irrelevant"); Weihaupt v. American Medical Ass'n, 874 F.2d 419, 429 (7th Cir.1989) (mere fact that employer's beliefs were based on subjective factors fails to establish that their assessment of employee's skills were made in bad faith); Dorsch v. L.B. Foster Co., 782 F.2d 1421, 1427 (7th Cir.1986) (a "subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one"). Plaintiff here has failed to show that any subjective facts defendant might have relied upon were insufficient to justify the employer's hiring decision.
 
 
 11
 The third and last area of evidence plaintiff points to in order to establish a factual dispute involves the reasons for keeping the two under-40 proofreaders instead of retaining plaintiff. Plaintiff, without citation to the record, argues that Lynn Barker and William Sorge both had "less experience as a proofreader" than plaintiff. Defendant, however, supplied specific facts detailing the experience of Barker and Sorge. Sorge, 34 years old, had worked as a supervisor with defendant, and thus had management experience which O'Brien thought could "prove valuable." Prior to becoming a supervisor, he had apprenticed at defendant's (still open) AGS as an ad work proofreader, and had worked at AGS full-time. O'Brien concluded that Sorge "had better, more extensive, and more recent experience and training in ad work than plaintiff had." Barker, also 34 years old, had experience as a management employee, and had worked on a specialized retail account that was absorbed by AGS after defendant's other plant closed. In contrast, plaintiff normally did not perform ad work,[8] and did not have the flexibility of having worked on numerous other retail accounts that survived the one plant's closing and were transferred to the AGS plant.
 
 
 12
 Plaintiff failed to refute these facts. Consequently, under Local Rule 12 of the Northern District of Illinois, which the courts apply strictly ( Valenti v. Qualex, Inc., 970 F.2d 363, 368 (7th Cir.1992)), the uncontradicted facts are deemed admitted. A flat denial, without reference to supporting materials, is insufficient under Rule 12. Id. Defendant had no complaints about plaintiff's work performance. It simply found that the two under-40 employees brought a broader and more flexible base of experience, something defendant needed after the two major RIFs. Afterall, the "essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3d Cir.1988), cert. denied, 490 U.S. 1098 (1989). The company incurs no duty to transfer employees to another position within the company. Simpson v. Midland-Ross Corp., 823 F.2d 937, 942 n. 6 (6th Cir.1987). Moreover, if plaintiff's evidence here were considered sufficient to withstand summary judgment, it "would effectively prohibit employers from planning and implementing RIFs if the reductions affected employees in the protected age group." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1083 n. 4 (11th Cir.1990).
 
 
 13
 Finally, even if defendant did terminate plaintiff under the mistaken belief that he had less experience at ad work, or less flexibility on other accounts, or even if defendant failed in its attempt to retain its "best people," it does not establish a causal connection between the termination and age discrimination.[9] "The question is not whether the ratings [or evaluations] were right but whether the employer's description of its reasons is honest. " Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992) (the ADEA "should not be mistaken for a labor arbitrator. Incorrect ratings are not age discrimination"); Dorsch, 782 F.2d at 1426. A business termination which is ill-informed or ill-considered is not a pretext for age discrimination. Lindsey v. Baxter Healthcare Corp., 962 F.2d 586, 588 (7th Cir.) ("age discrimination law does not shift responsibility for corporate personnel decisions from corporations to trial lawyers"), cert. denied, 113 S.Ct. 442 (1992); Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.) cert. denied, 484 U.S. 977 (1987).
 
 
 14
 Even viewing the record and all inferences drawn from it in a light most favorable to plaintiff, we cannot find any genuine issues of material fact. The district court properly entered summary judgment in favor of defendant.
 
 
 15
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 Count II of the complaint, a handicap discrimination claim under the Illinois Human Rights Act, was dismissed, and plaintiff does not appeal from that dismissal
 
 
 [3]
 Of course, summary judgment differs from a directed verdict in that affidavit evidence cannot be cross-examined and the credibility of witnesses cannot be judged by a trier of fact. Nevertheless, determining whether a defendant has met its burden of production, successfully rebutting a legal presumption of intentional discrimination raised by plaintiff's prima facie case, "can involve no credibility assessment. For the burden-of-production determination necessarily precedes the credibility-assessment stage." St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2748 (1993)
 
 
 [4]
 That is not to say that a prima facie case will have no effect on the verdict. Plaintiff may have anticapatorily demonstrated pretext in his prima facie case. See St. Mary's Honor Center v. Hicks
 
 
 [5]
 Compare disparate impact claims, where both the burden of production and the burden of persuasion shift to the employer to show that the practice is job-related and consistent with business necessity. This court has thus far declined to decide whether these 1991 amendments to the Civil Rights Act have any bearing on the ADEA. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1245 n. 4 (7th Cir.1992)
 
 
 [6]
 One reduction in force (RIF) occurred in June 1989, and another in December 1989
 
 
 [7]
 Plaintiff also refers to "long-settled law than an employer's use of subjective job criteria tends to adversely affect those in the legally protected categories." Plaintiff offers no citations for this long-settled law, and this court is not aware of any support for the stated proposition
 
 
 [8]
 Retail work is considered more routine and repetitive, while ad work is more customized and variable. Ad work requires more work for proofreaders because it involves many different typefaces and contours (moving printed text around photographs and artwork)
 
 
 [9]
 After an exhaustive study of age discrimination cases, and in "the hope of forestalling the unnecessary expenditure of plaintiffs' funds and judicial resources through the filing of flawed age discrimination cases," the Fifth Circuit recently concluded that the "most prevalent flaw in the losing plaintiffs' evidence is the absence of proof of nexus between the firing (or failure to promote) and the allegedly discriminatory acts of the employer." Moore, 990 F.2d at 817, n. 24