23 F.3d 410
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Rudolph SCHLOSSER, Plaintiff-Appellant,
v.
CULLIGAN INTERNATIONAL CORPORATION, Defendant-Appellee.
 No. 93-3014.
 United States Court of Appeals, Seventh Circuit.
 Argued April 6, 1994.
Decided May 10, 1994.
 
 1
 Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge[1].
 
 ORDER
 
 2
 Rudolph O. Schlosser appeals from an order of the district court granting summary judgment to defendant-appellee Culligan International, Inc., on Schlosser's claim of age discrimination under 29 U.S.C. Secs. 621-634, the Age Discrimination in Employment Act of 1967. Jurisdiction is present. 28 U.S.C. Sec. 1291. This is a timely appeal from a final decision in a case raising a federal question. Schlosser contends that in granting Culligan's motion, the court erred by making credibility determinations and by failing to draw all reasonable inferences in favor of the non-moving party, as required by Fed.R.Civ.P. 56(c). We conclude that Schlosser failed to raise a genuine issue of disputed fact requiring trial and that the district court acted properly in granting Culligan's motion.
 
 
 3
 In order to make out a prima facie case of age discrimination, a plaintiff must show he was more than 40 years old, was performing his job responsibilities well enough to meet his employer's legitimate expectations, qualified for the position he sought, the subject of a materially adverse employment action, and that the employer sought a replacement for him. Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir.1994) (citing Konowitz v. Schnadig Corp., 965 F.2d 230, 232 (7th Cir.1992)); La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1409 (7th Cir.1984). The district court found it undisputed that Schlosser was born on August 16, 1929; that he worked as credit manager for Culligan from 1972 until January 1992, with responsibility for overseeing the approval or denial of credit, keeping dealer accounts current and collecting money due Culligan, protecting Culligan by making sound credit decisions, keeping management apprised of the status of various accounts and training, supervising the staff of the credit department and completing special projects that were assigned to him. The district court found that Schlosser had shown that he had been replaced by a younger person. For the purpose of deciding the motion, the court assumed that Schlosser could show both that he was qualified for the position he held and that he had been constructively discharged, although these two points were contested vigorously by Culligan.
 
 
 4
 Having assumed that Schlosser could make out a prima facie case of age discrimination, the court looked at the evidence of a non-discriminatory discharge adduced by Culligan, found it sufficient to meet Culligan's burden of production and held that Schlosser had not shown that the reasons proffered by Culligan were mere pretext or otherwise invalid.
 
 
 5
 Summing up Culligan's evidence, the court noted that it included the following: that Schlosser was consistently late in turning in a number of reports; that he challenged his superior's judgment in front of other staff members; neglected the monthly follow-up on royalties due Culligan; failed to produce bulletins regarding the company's finance program; failed to follow-up of delinquent account collection; did not take an active role in the computer disaster recovery plan; neglected filing the UCC-1 statements for a Culligan account in Springfield, Missouri; did not adequately apprise his superior of the status of the credit department; and approved a note with an incorrect interest rate without obtaining his superior's prior approval of the note as he was supposed to do. The court found that Schlosser did not deny the deficiencies listed by Culligan, but attempted to try to explain them as the result of understaffing of his department or by asserting that they were projects that had been reassigned to others or that in his opinion should not have been assigned to him.
 
 
 6
 On appeal, Schlosser does not deny any of the claimed deficiencies, but continues to iterate his explanations for them. He says, for example, that he did not have adequate time to complete some assignments by the dates they were due or that he lacked adequate secretarial help to get them done. He explains that in one instance, he had been relieved of the responsibility for completing the assignment when he had failed to complete it earlier and therefore should not be blamed for not finishing it thereafter; with respect to the UCC-1 financing statement, he says that he had never been responsible for these in the past and did not realize that his new supervisor wanted him to handle it. As to other assignments, he says he did not perform them either because he did not think they were practical or because he could not develop a positive attitude toward them. He did not submit activity letters on his department as requested because he did not think things were progressing properly in his area. As to the note he approved with the wrong credit rate in direct contravention of his superior's orders to submit all such notes in advance, he says only that there was no real harm done, because the "approval" was not binding on Culligan. In short, Schlosser offers his view of what he should have been expected to do for his employer; he does not show that it was error for Culligan to assess his failure to comply with his superior's requests as either inadequate work performance or as resistance to authority.
 
 
 7
 Schlosser does not seem to understand that proving a case of discrimination without any direct proof of such discrimination requires more than a showing that the employee disagrees with the wisdom or reasonableness of his employer's demands. Rather, it requires that the employee establish the pretextual nature of the employer's explanation, in other words, show that the explanation is a fabrication rather than the real reason for the employer's action. Schlosser might do this in a number of ways. First, he could show that the claimed deficiencies were untrue; that in fact he did submit the reports in timely fashion and did follow up on the tasks he was assigned, etc. He has not done this. Second, he could show that the employer never made the demands it says it made, but instead made them up after the fact. Cf. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039-42 (7th Cir.1993) (in age discrimination case in which employer took position that employee was discharged for violating no-dating policy, whether employer actually had a policy prohibiting dating of subordinates was genuine issue of fact for trial). Schlosser has made no showing that his superior's demands were not known to him at the time (with the possible exception of the expectation that he file the UCC financing statement). Third, he could show that younger employees in similar positions were held to lower standards or treated more leniently than he was. Cf. Christie v. Foremost Ins. Co., 785 F.2d 584, 586 (7th Cir.1986) (younger employee evaluated on less demanding tasks). Fourth, he could show that the demands imposed upon him were so onerous, so unusual or so unrelated to the legitimate needs of the employer as to be pretextual. See, e.g., Fisher v. Transco Services-Milwaukee, 979 F.2d 1239, 1244 (7th Cir.1992) (employer's requirement that employees achieve 100% performance under demanding program was so unreasonable as to imply age discrimination when coupled with alleged manner of program's implementation favoring younger workers). He has not made such a showing. Unlike the plaintiffs in Fisher, who came forward with statistical and comparative information about the scope and implementation of their employer's program, Schlosser has offered only his own testimony about the nature of his superior's demands and his own difficulties in complying with them; this falls far short of an objective showing that the demands were so outlandish as to be pretextual. See Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir.1986) (to show pretext, plaintiff "must do more than challenge the judgment of his superiors through his own self-interested assertions"), cert. denied, 479 U.S. 1066 (1987); Huhn v. Koehring, 718 F.2d 239, 244 (7th Cir.1983); Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir.1980), cert. denied, 450 U.S. 959 (1981). See also Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992):
 
 
 8
 An employee's self-serving statements about his ability ... may create a material dispute about the employee's ability but do nothing to create a dispute about the employer's honesty--do nothing, in other words, to establish that the proffered reason is a pretext for discrimination.
 
 
 9
 Schlosser placed weight on the undisputed fact that his superior consulted his own superior after about four months of working with Schlosser and experiencing increasing dissatisfaction with Schlosser's performance and was told to "go see legal." The comment reveals nothing that might be indicative of age discrimination. If Schlosser's superior was thinking of taking any action against Schlosser for any reason, it was simply prudent procedure to consult with legal counsel.
 
 
 10
 At oral argument, Schlosser's counsel was pressed repeatedly to identify anything in the record that raised a disputed issue on any fact material to the showing of pretext. He was unable to respond with any specific example of a dispute that the district court might have overlooked. Instead, he argued that what was in dispute was the very issue of age discrimination. This is not enough. It is appropriate, even necessary, for the district courts to use summary judgment to test the sufficiency of evidence before committing the judiciary's limited resources to a trial and asking citizens temporarily to abandon their own occupations to serve as jurors. It is the trial judge's responsibility to assess the evidence in advance, rather than letting every case proceed to trial "on the mere hope that a trial would produce evidence he was unable to garner at the stage of summary judgment." Parker v. Federal National Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir.1984).
 
 
 11
 Schlosser maintains that the district court made improper credibility determinations in favor of Culligan, depriving the jury of the chance to evaluate the credibility of his employer's assessment of Schlosser's job performance. The court did not have to assess the superior's credibility in order to grant judgment for Culligan. Its decision is supported by Culligan's showing of Schlosser's deficiencies and Schlosser's failure to adduce any evidence to show that these listed deficiencies were pretextual. Indeed, it is questionable whether Schlosser could make a prima facie case on the question whether he was meeting his employer's legitimate expectations. He cites a performance evaluation, saying it shows that he had had an excellent job rating before his new supervisor took over. In fact, the performance evaluation shows that although Schlosser was rated as having "excellent knowledge of subject matter" and "excellent knowledge of credit area," he was rated fairly low in other respects. He was reported to have problems with tact, with handling his work load, with having "more disputes and problems than time," with his communications with employees, dealers and associates, and with not always making "the best decisions." This report, the continuing challenges to his superior's authority, and his failure to complete assigned tasks suggest strongly that Schlosser was not meeting the legitimate demands of the company.
 
 
 12
 Schlosser argues that the district court misapplied St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993) and placed a higher burden on him than is justified under the holding in that case or under Anderson v. Baxter Healthcare Corp., 13 F.3d 1120 (7th Cir.1994). This argument requires no discussion: in Hicks, the Supreme Court addressed the question whether merely establishing that the employer's proffered explanation is pretextual requires the fact finder to find in favor of the plaintiff and held that it does not. In Anderson, this court explained that under Hicks, the plaintiff may prevail by showing nothing more than pretext without any additional proof of discrimination. The question of the adequacy of proof of "pretext only" does not arise until the plaintiff has shown pretext. Schlosser never reached that point. He failed to come forward with proof of the existence of any material fact that would tend to show that his employer fabricated its reasons for taking an adverse action against him.
 
 
 13
 The decision of the district court granting summary judgment for Culligan International, Inc., is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The Hon. Barbara B. Crabb, Chief Judge for the Western District of Wisconsin, is sitting by designation